UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

:
UNITED STATES, : CASE NO. 5:19-cr-86
:
    Plaintiff, : OPINION & ORDER
: [Resolving Doc. 12]
vs. :
:
ANTHONY KING, :
:
    Defendant. :
:

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

A federal grand jury indicted Defendant Anthony King for being a felon in possession of a firearm or ammunition. On March 25, 2019, Defendant King moved to suppress evidence, specifically a gun that officers found in Defendant's home and Defendant's statements about the gun.[1]

For the following reasons, the Court **DENIES** Defendant's suppression motion.

## I. Background

On August 8, 2018, officers twice searched the home that Defendant King shares with his girlfriend. The government says officers conducted (1) an initial protective sweep and (2) after obtaining Defendant's consent, a second complete search of the home.

During the second search of Defendant's home, officers found a gun and a small quantity of drugs. This prompted the officers to handcuff and question Defendant. During the handcuffed questioning, Defendant stated that someone else kept a gun in his home. Seeking to suppress the gun-related evidence, Defendant challenges the legality of both

---

[1] Doc. 12. The government opposes. Doc. 13. Defendant replies. Doc. 16. The Court conducted a suppression hearing on April 25, 2019.

searches.

The August 8, 2018 encounter came after a confidential informant gave police an illegal drug activity tip and firearm possession tip about a 211 Fulton Road NW, Canton, Ohio residence. ATF Special Agent John Smerglia testified that the source had given past reliable information.

On August 8, 2018 at 6:30 p.m., several law enforcement officers visually surveilled the Fulton Road home from various vantage points to determine whether activity corroborated the tip. During the 20-to-30-minute period, the officers witnessed between three to five people come and go from the Fulton Road home. One man appeared to walk away from the Fulton Road home carrying multiple bags.

Believing the foot traffic to indicate drug activity, the officers approached the residence. A group of eight or nine armed officers simultaneously pulled up to the Fulton Road home in five police vehicles. One officer whose surveillance position had given him a front view of home remained in position throughout the encounter.

Upon pulling up, the officers encountered three men—one being Defendant King—on the front stoop of the Fulton Road home listening to music. Some officers conducted pat-downs of the two men other than Defendant King. Officers found a small quantity of heroin on one of those men.

Speaking with three other officers, Defendant King identified himself as a resident of the Fulton Road home. The officers asked Defendant King if anyone was in the home. Defendant said there was not.

The three officers entered Defendant's home anyways, claiming they needed to

clear the home for officer safety. After about one or two minutes, finding no persons inside, the officers exited the home.

Back on the stoop with Defendant, some officers asked Defendant King's consent to search his home. During these discussions, an agent told Defendant that he would get a search warrant for Defendant's home if Defendant did not consent. Defendant thereafter gave verbal consent to the home search and signed a written consent form.

The officers searched the home while Defendant mostly remained on the stoop outside. In the bedroom closet, officers found an open safe containing a loaded Beretta 9mm pistol. The officers also found a small quantity of crack-cocaine and marijuana on a bedside table.

It appears that it was only at this point that officers handcuffed Defendant. Officers took Defendant to a police vehicle, where they read him his Miranda rights and conducted a recorded interview. During the interview, Defendant King stated that he allowed someone to keep a gun in the house.

On February 12, 2019, a federal grand jury indicted King on one count of being a felon in possession of a firearm and ammunition.

## II. Discussion

Defendant seeks to suppress evidence and claims the government conducted two unlawful searches of his home. At issue is whether the officers lawfully conducted the protective sweep of Defendant's home and whether Defendant's consent was valid.

### A. The Officers' Protective Sweep of Defendant's Home Was Unlawful

Defendant claims that the officers' purported "protective sweep" of his home was unlawful. A protective sweep is a limited exception to the general rule that a valid warrant

Case No. 5:19-cr-86
Gwin, J.

or consent is required before officers may search an individual's home.[2] As with other warrantless searches, the government bears the burden of proving that the protective sweep was legitimate.[3]

As the Supreme Court explained in *Maryland v. Buie*, a protective sweep is a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others."[4] This search is limited to "a cursory inspection of those spaces where a person may be found" and may "last[] no longer than is necessary to dispel the reasonable suspicion of danger."[5] Law enforcement may conduct a protective sweep only if there are specific articulable facts from which a reasonable officer could conclude that someone in the home poses a danger to people at the arrest scene.[6]

Here, the officers had no articulable basis to believe that anyone was in King's house as King sat on the front porch.

The circumstances here are distinguishable from *Buie* in at least two significant ways: (1) at the time of the protective sweep, the officers had no authority to arrest Defendant and (2) the officers were not already lawfully present in Defendant's home. The government argues[7] that the Sixth Circuit has extended *Buie* to other circumstances and

---

[2] *Maryland v. Buie,* 494 U.S. 325, 334 (1990); *United States v. Stover*, 474 F.3d 904, 911 (6th Cir. 2007).
[3] *United States v. Akrawi*, 920 F.2d 418, 421 (6th Cir. 1990).
[4] *Buie,* 494 U.S. at 327.
[5] *Id.* at 335–36.
[6] *Id.* at 334.
[7] At the suppression hearing, the government for the first time argued that Defendant King gave consent for the protective sweep. In support, ATF Agent Smerglia testified that Defendant said it was fine for the officers to search his home to see if there were any other people in the house.

The Court does not find Agent Smerglia's testimony to be credible in light of the other evidence. None of the officers recorded or documented this consent, despite having the means to do so. Further, neither police report on the August 8, 2018 encounter mentions that Defendant consented to the protective sweep. Finally, Agent Smerglia claims to have relayed this information about Defendant's consent to the protective sweep to AUSA Peter Daly before the government's opposition brief. Yet Daly omitted this seemingly important detail from his opposition brief—despite arguing that Defendant consented to the second home search. Accordingly, the Court finds that the government has not

-4-

Case No. 5:19-cr-86
Gwin, J.

that those cases authorize the officers' protective sweep of Defendant's home. The government is mistaken.

*United States v. Colbert* extended *Buie* to some situations involving arrests immediately outside the home.[8] Officers may conduct such a protective sweep only if officers have an articulable basis for reasonably believing that someone inside the home might pose a danger to those at the scene outside the home.[9]

*United States v. Holland* extended *Buie* to a narrow non-arrest situation, where officers are already lawfully present in the home and perceive events that newly give rise to probable cause for a warrant to search the home.[10] Again, the officers also must have a specific articulable basis for believing that someone posing a danger to them is hidden in the home.[11]

Neither *Colbert* nor *Holland* authorize the officers' protective sweep of Defendant's home. A protective sweep can only be conducted incident to an authorized search or seizure, such as a lawful arrest or lawful home entry. Here, the officers had no authority to arrest Defendant King or enter his home.

Even if the officers had this authority, the officers did not have a specific articulable basis for believing that someone else inside the home might pose a danger to them in front of the home. The government's witness, ATF Agent Smerglia, repeatedly testified that he and other officers did not know whether there were people were in Defendant's home.[12]

---

sustained its burden of showing that Defendant consented to the protective sweep of his home.
   [8] *United States v. Colbert,* 76 F.3d 773, 776–77 (6th Cir.1996).
   [9] *Id.* at 777.
   [10] *United States v. Holland,* 522 F. App'x 265, 275–76 (6th Cir. 2013).
   [11] *Id.* at 276.
   [12] Agent Smerglia testified that officers were concerned about the possibility of someone dangerous in the home because individuals had been coming and going from home and because the confidential informant had alleged that

Case No. 5:19-cr-86
Gwin, J.

The Sixth Circuit has repeatedly held that lack of knowledge is not enough to justify a protective sweep.[13] The Court finds that the officer's protective sweep of Defendant's home was unlawful.

### B. Defendant's Consent to the Home Search Was Sufficiently Voluntary and Not Tainted by the Unlawful Protective Sweep

After the unlawful protective sweep of Defendant's home, the officers sought—and Defendant gave—his consent for a search of Defendant's home. At issue is whether Defendant's consent was voluntarily given and whether Defendant's consent was tainted by the officers' unlawful protective sweep.

#### 1. Voluntariness

Defendant claims that he did not voluntarily give his consent to the home search because an officer had threatened to obtain a warrant to search his home if Defendant did not consent. Although an officer's baseless threat to obtain a warrant may render a consent involuntary,[14] the threat here was a stretch but was not completely baseless.

An arguably reliable confidential source alleged illegal drug activity and firearm possession at the Fulton Road home—later determined to be Defendant King and his girlfriend's residence. During the 20-to-30-minute period of surveillance, the officers

---

there was firearm possession at the home. However, Agent Smerglia testified numerous times that the officers did not know whether individuals were inside. The officer who continued surveillance on the front of the home presumably would have communicated via radio if someone had entered the home but did not leave. The officers also asked Defendant King if anyone was in the home, and he said no.

[13] *E.g.*, *United States v. Colbert*, 76 F.3d 773, 777–78 (6th Cir. 1996) ("Lack of information cannot provide an articulable basis upon which to justify a protective sweep."); *United States v. Pihlblad*, 142 F.3d 437, 1998 WL 165150, at *3 (6th Cir. 1998) (table) ("The police had no information that a dangerous third party might be inside of the house; at most, they 'did not know' if anyone else was present. The dangerousness of the defendant and the absence of information do not constitute articulable facts.").

[14] *United States v. Bond*, 433 F. App'x 441, 445 (6th Cir. 2011) (citing *United States v. Salvo,* 133 F.3d 943, 954 (6th Cir.1998) ("In limited circumstances, an officer's threat to obtain a warrant if a defendant does not consent to a search can taint that defendant's consent—namely, when the threats are 'baseless' or a pretext to coerce the defendant.").

Case No. 5:19-cr-86
Gwin, J.

witnessed three to five people coming and going from the home, including one man walking away from the home with multiple bags. The officers could believe this foot traffic indicated drug activity.

Upon approaching the Fulton Road home, officers found a small quantity of heroin on the person of one of the men on the stoop. This small finding would give little support for a search warrant. Only a small, personal use quantity was found and nothing tied the finding to King's home.

Further, at the time when Agent Smerglia and Special Agent Mark McMurtry obtained Defendant's consent for the home search, it appears that Agent Smerglia may have believed that one of the other officers observed marijuana during the protective sweep. This might give some more support for a search warrant, although minimal if the police sought to argue that major drug dealing centered on the Fulton Road home.

Nevertheless, the agents had observed suspicious short-stop traffic into the house. And the police had the arguably reliable informant's statement. Given this evidence, any threat to obtain a warrant to search the home was not completely baseless. Accordingly, the officer's statement about obtaining a warrant did not render Defendant's consent involuntary.

### 2. The Taint of the Unlawful Protective Sweep

Defendant claims that the officers' unlawful protective sweep tainted the consent that Defendant gave to the subsequent search of his home.

An illegal home entry typically makes any ensuing searches or interrogations

Case No. 5:19-cr-86
Gwin, J.

unlawful.[15] If an individual gives consent to a search of the home after the illegal entry, evidence obtained pursuant to the consent must be suppressed unless the individual's consent was "sufficiently an act of free will to purge the primary taint of the unlawful invasion."[16] "In other words, not only must the consent be valid, *i.e.,* voluntary, ... but the causal chain between the illegal [entry] and the consent must be broken to avoid the consequences of the exclusionary rule."[17]

Purging this taint from the illegal entry "ordinarily involves showing that there was some significant intervening time, space, or event" between the illegal entry and the consent.[18] To determine whether the consent is sufficiently attenuated from the illegal entry due to intervening circumstances, the Sixth Circuit considers four factors:

(1) the length of time between the illegal seizure and the consent;

(2) the presence of intervening circumstances;

(3) the purpose and flagrancy of the official misconduct; and

(4) whether the officers read the suspect his *Miranda* rights before he consented.[19]

The fourth factor is inapplicable here.

The first factor—the time between the unlawful entry and Defendant's consent—favors Defendant. The officers sought and obtained Defendant's consent immediately after they conducted the unlawful protective sweep.

However, the second and third factors—the presence of intervening circumstances

---

[15] *United States v. Buchanan,* 904 F.2d 349, 356 (6th Cir.1990) (citation omitted).
[16] *Id.* at 355 (quoting *Brown v. Illinois,* 422 U.S. 590, 599 (1975)) (emphasis omitted).
[17] *United States v. Lopez-Arias,* 344 F.3d 623, 629 (6th Cir. 2003) (citing *Dunaway v. New York,* 442 U.S. 200, 217–19 (1979); *Brown,* 422 U.S. at 602–04; *Buchanan,* 904 F.2d at 355–56).
[18] *Buchanan,* 904 F.2d at 356 (citation omitted).
[19] *Lopez-Arias,* 344 F.3d at 630 (citing *Kaupp v. Texas,* 538 U.S. 626, 631 (2003); *Brown,* 422 U.S. at 603–04).

Case No. 5:19-cr-86
Gwin, J.

and the purpose and flagrancy of the official misconduct—favor the government and together reveal that Defendant's consent was sufficiently an act of free will to purge the primary taint of the unlawful invasion.

Unlike some other cases involving tainted consent, where officers obtain the consent while they are still present in the home after an unlawful entry and after officers have arrested the defendant,[20] the harm from the unlawful protective sweep in this case does not appear to infect subsequent events. The protective sweep was fairly limited in duration, lasting one or two minutes, and the officers immediately exited the home after the protective sweep. Defendant had remained outside on the stoop during the sweep and was not handcuffed. After exiting, the officers thereafter attempted to obtain consent from Defendant on the stoop. It does not appear that anything seen during the protective sweep was used to pressure Defendant's consent.

Because the unlawful protective sweep did not taint Defendant's consent to the home search, the Court denies Defendant's motion to suppress the evidence resulting from the home search and the interrogation.

## Conclusion

For these reasons, the Court **DENIES** Defendant's suppression motion.

IT IS SO ORDERED.

Dated: April 27, 2019          s/ _James S. Gwin_
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE

---

[20] *See Buchanan*, 904 F.2d at 356 (finding no significant intervening event purged the taint from an unlawful home entry purportedly based on exigent circumstances, where the defendant had been handcuffed in his home for an hour when he signed the consent form authorizing the home search).

-9-